UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BIG CAT RECORDS, LLC,

                              07 CV

          Plaintiff,

      -against-

La FLARE ENTERTAINMENT, LLC,

          Defendant.
------------------------------------------------------------X


## MEMORANDUM IN SUPPORT OF PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT

TABLE OF CONTENTS

Page

Table of Authorities .................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Statement of Facts ....................................................................................................... 3

Argument I

    SINCE THIS CASE INVOLVES AN ACTUAL CONTROVERSY BETWEEN THE PARTIES, THIS COURT HAS JURISDICTION OVER THIS MATTER PURSUANT TO THE DECLARATORY JUDGMENT ACT ............................................. 7

Argument II

    SINCE PLAINTIFF IS A JOINT OWNER OF THE RECORDINGS, DEFENDANT CANNOT MAINTAIN AN ACTION AGAINST PLAINTIFF FOR COPYRIGHT INFRINGEMENT AND, AS SUCH, PLAINTIFF SHOULD BE ESTOPPED FROM COMMENCING ANY SUCH ACTION IN THE FUTURE ........................................... 9

Argument III

    SINCE THE PARTIES TO THE 2005 JOINT VENUTRE AGREEMENT EXPRESSLY ADDRESSED IN THE JOINT VENTURE AGREEMENT THE ISSUE OF OWNERSHIP OF THE COPYRIGHTS IN THE RECORDINGS, SUCH OWNERSHIP SPLIT SURVIVES EVEN THOUGH THE TERM OF THE 2005 JOINT VENTURE AGREEMENT HAS ENDED ............................................................................................................. 11

Argument IV

    SINCE PLAINTIFF DID NOT DRAFT THE ATLANTIC/BIG CAT AGREEMENT, ANY AMBIGUITIES OR DOUBT AS TO THE TERMS OF THAT AGREEMENT SHOULD BE CONSTRUED IN PLAINTIFF'S FAVOR ............................................................ 12

Conclusion .................................................................................................................. 13

Table of Authorities

**Cases Cited:**                                                                                     Page(s)

Cowen & Co. v. Anderson, 76 N.Y.2d 318, 323 (N.Y. 1990)............................. 12

Donna v. Dodd, Mead & Co., 374 F. Supp. 429, 430;

1974 U.S. Dist. LEXIS 8907; 183 U.S.P.Q. (BNA).................................... 9

Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,

140 F.2d 266 (2d Cir. 1944)............................................................ 9

Larami Corp. v. Amron, 1994 U.S. Dist. LEXIS 9453 (S.D.N.Y. 1994).............. 7, 8

Richmond v. Weiner, 353 F.2d 41 (9th Cir. 1965) cert. denied, 384 U.S. 928, 86 S. Ct.

1447, 16 L. Ed. 2d 531 (1966)......................................................... 9

Winston v. Mezzanine Invs., L.P., 170 Misc. 2d 241, 250 (N.Y. Misc. 1996)............ 12

**Statutes Cited:**

Federal Rules of Civil Procedure, Rule 57............................................... 1, 7

28 U.S.C. § 2201, 2202 ................................................................... 1, 7, 8

Official Code of Georgia Annotated, O.C.G.A. Section 14-8-8 (e) (2007) ................ 11

**Treatises Cited:**

1 Melville B. Nimmer, Nimmer on Copyright Section 6.10[A] (2007) ................. 9, 10

10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2751 (2007)........ 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BIG CAT RECORDS, LLC,                          :
                                               :    07 CV
                    Plaintiff,                 :
                                               :
        -against-                              :
                                               :
La FLARE ENTERTAINMENT, LLC,                   :
                                               :
                    Defendant.                 :
------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201, 2202 and Federal Rule of Civil Procedure 57, Plaintiff Big Cat Records LLC ("Plaintiff"), by and through its attorneys, Eisenberg Tanchum & Levy, submits this memorandum of law in support of its request for an expedited hearing seeking declaratory judgment in Plaintiff's favor that would allow Plaintiff to commercially exploit certain sound recordings and musical compositions without being subject to a copyright infringement claim by the defendant La Flare Entertainment, LLC ("Defendant") or any of its agents or assignees.

### Preliminary Statement

This is a simple action involving contract interpretation. As set forth more fully below, Plaintiff requests that the Court conclusively determine the rights of the parties with respect to sound recordings ("Recordings") and the musical compositions embodied therein ("Compositions") featuring the performances of a recording artist named Radric Davis, professionally known as "Gucci-Mane ("Gucci-Mane" or "Artist") that were created pursuant to a written joint venture agreement between the parties in 2005. Plaintiff is compelled to bring this action by order to show cause due to the fact that Plaintiff's intended release of the Recordings

on September 25, 2007, has been placed in jeopardy by threats of litigation made by Defendant's attorneys. Specifically, Defendant's attorneys have maintained the baseless position that Plaintiff's release of said Recordings would constitute willful copyright infringement of Defendant's rights. Given the prohibitive costs and expenses that Plaintiff would incur defending itself in such a lawsuit brought by Defendant, who apparently has the backing of a major record label, the Plaintiff seeks relief from this Court to establish the parties' rights and obligations with respect to the Recordings and Compositions.

For the reasons set forth herein as well as in the accompanying affidavits and complaint, the Plaintiff respectfully requests that this Court issue a declaratory judgment: (a) confirming that Plaintiff owns an undivided fifty (50.0%) percent interest in the Recordings, whether such Recordings have already been released to the public or not; (b) confirming that Plaintiff has the unfettered right to commercially exploit the Recordings and the Compositions embodied therein; and (c) enjoining Defendant, and any of its agents, licensees or assignees from commencing an action against the Plaintiff, or any of its agents, licensees or assignees, sounding in copyright infringement based on Plaintiff's commercial exploitation of the Recordings or the Compositions embodied therein.

This action has been brought on by order to show cause due to the exigencies of this dispute.

## STATEMENT OF FACTS

The facts of this case are set forth more fully in the accompanying affidavits of Marlon Rowe, Thomas Silverman and Stewart Levy, and the exhibits attached thereto. However, for the convenience of the Court, the relevant facts are summarized below.

### *The Governing Agreements*

At the heart of this action are two written agreements that govern the parties' respective rights to the Recordings and Compositions.

### *The 2005 Joint Venture Agreement*

On or about January 20, 2005, Plaintiff and Defendant entered into a joint venture agreement setting forth the parties' understandings with respect to the creation and subsequent commercial exploitation of the Recordings and Compositions (Affidavit of Marlon Rowe "Rowe Aff.", Ex.B). The parties later amended the terms of the initial joint venture agreement by means of a written agreement dated June 3, 2005 (Rowe Aff. Ex. C) (The January 20, 2005 and June 3, 2005 amendment are collectively referred to herein as the "2005 Joint Venture Agreement"). Notably, Artist executed both agreements on behalf of Defendant and also agreed to be bound individually by the terms of the 2005 Joint Venture Agreement (Rowe Aff. Exs B and C, pages 7-10 and 2, respectively).

The 2005 Joint Venture Agreement called for Defendant to furnish Artist's exclusive recording artist services to the venture for the purposes of creating and commercially exploiting up to four (4) albums containing the Recordings, with albums two (2) through four (4) being at Plaintiff's option (Rowe Aff., Ex. C, Para. 1). Plaintiff has already released the first two albums pursuant to the 2005 Joint Venture Agreement and plans to release a third album on September 25, 2007 (Rowe Aff., Paras 11, 12 and 30).

With respect to ownership of the Recordings, the 2005 Joint Venture Agreement initially called for Defendant to grant an exclusive license to Plaintiff allowing Plaintiff to commercially exploit the Recordings during the term of the 2005 Joint Venture Agreement (Rowe Aff., Ex. B, Para. 13). As set forth in the initial January 20, 2005 agreement between the parties, upon termination of the joint venture, the license granted to Plaintiff would have been revoked and Plaintiff would have been limited to a "sell-off period of one (1) year" to dispose of already released Recordings (Rowe Aff., Ex. B, Para. 13).

The ownership rights of the parties to the Recordings materially changed in the June 3, 2005 amendment which granted Plaintiff an undivided fifty (50.0%) percent interest in the Recordings. The new paragraph 13 of the 2005 Joint Venture Agreement reads, in pertinent part:

> 2. Paragraph 13 previously entitled, Exclusive License, shall be deleted and replaced with the following provision: Ownership of Masters. Venture Partner [Defendant] hereby assigns, transfers, conveys and sells to Company [Plaintiff] an undivided fifty (50%) percent interest in all of Venture Partner's right, title and interest in all Master Recordings by Artist . . . (Rowe Aff., Ex. C, Para. 2)

Plaintiff, instead of being a licensee during the term of the 2005 Joint Venture Agreement, became, as a result of the June 3, 2005 amendment, signed by Defendant and Artist, a joint owner of the Recordings with Defendant.

Paragraph 2 of the June 3, 2005 amendment also reaffirms language found in the January 20, 2005 initial joint venture agreement that obligates Defendant to provide "all necessary assignments of copyrights, mechanical licenses . . . required to manufacture, market, distribute and sell records." Paragraph 2 of the June 3, 2005 amendment goes on to grant to Plaintiff "the exclusive and perpetual right to use Artist's approved name and likeness in connection with Company's [Plaintiff's] exploitation of records embodying Artist's

performances and for Company's [Plaintiff's] or Distributor's 'good-will' advertising" (Rowe Aff. Ex. C, Para. 2).

*The Atlantic/Big Cat Agreement*

After the Fall 2006 release by Plaintiff of Artist's second album, Atlantic Recording Corporation ("Atlantic"), a member of the Warner Bros. Music collection of record labels, expressed an interest in obtaining the rights to Artist's recording artist services (Rowe Aff., Paras. 13, 14). Atlantic's interest in Artist's services turned into negotiations which resulted in an agreement, drafted by Atlantic's attorneys, dated as of November 16, 2006 (The "Atlantic/Big Cat Agreement") (Rowe Aff., Ex. D). The Atlantic/Big Cat Agreement was executed by, among others, Atlantic, Plaintiff, Defendant and Artist (Rowe Aff., Ex. D, page 7).

The only provision of the Atlantic/Big Cat Agreement relevant to this action is the provision of that agreement that deals with the 2005 Joint Venture Agreement. Specifically, paragraph 1 of the Atlantic/Big Cat Agreement states, in pertinent part:

> . . . the term of the Big Cat Artist Agreement [the 2005 Joint Venture Agreement] shall be deemed to be terminated as of the day prior to the commencement of the term of the Atlantic Artist Agreement (i.e. November 17, 2006)" . . . Accordingly, as of this date Big Cat hereby waives any and all rights it may have under the Big Cat Artist Agreement [the 2005 Joint Venture Agreement] or otherwise to the recording services of Artist, and neither LaFlare [Defendant] nor Artist shall have any further obligation to record, produce or deliver recordings to Big Cat. (Rowe Aff., Ex. D, Para. 1).

Even though Atlantic knew, at the time, that there were unreleased Recordings, the Atlantic/Big Cat Agreement is silent with respect to ownership of the Recordings, released or unreleased, as well as Plaintiff's right to continue commercially exploiting the Artist's first two albums (Rowe Aff., Paras. 17, 18 and Ex. D).

*Defendant's Threats of a Lawsuit Creates Exigent Circumstances*

Plaintiff had discussed with Defendant's representatives as late as August 2007 the possibility of selling Plaintiff's unreleased catalogue of Artist's Recordings, but having received no firm offer, Plaintiff continued with its plan to release a third album of Recordings made pursuant to the 2005 Joint Venture Agreement. Defendant has been aware for months that Plaintiff intended to make a third album (Rowe Aff. Para 22-24) and that the album has been pre-sold, shipped and is to be released to the public on September 25, 2007 (Rowe Aff., Paras. 32-35).

It therefore came as quite a surprise to Plaintiff when Defendant's counsel, by letters dated August 24, 2007 and September 7, 2007, suddenly threatened Plaintiff with claims of willful copyright infringement of Defendant's copyrights should Plaintiff commercially exploit the Recordings (Rowe Aff., Exs. E and F).

Given the imminent release by Plaintiff of Artist's third album on September 25, 2007, the Defendant's written threats of litigation stemming from such a release, the financial burden that defending such a lawsuit would impose upon a small company such as Plaintiff, and the debilitating effect any delay in the release of the album would inflict on Plaintiff, the Plaintiff commenced this declaratory judgment action seeking an expedited hearing (Rowe Aff., Paras. 29-38).

# ARGUMENT

## I

### SINCE THIS CASE INVOLVES AN ACTUAL CONTROVERSY BETWEEN THE PARTIES, THIS COURT HAS JURISDICTION OVER THIS MATTER PURSUANT TO THE DECLARATORY JUDGMENT ACT

Faced with written threats of a lawsuit for willful copyright infringement by Defendant's counsel, Plaintiff has, out of necessity, invoked the declaratory judgment provisions of 28 U.S.C. § 2201 and 2202 ("Declaratory Judgment Act") and Rule 57 of the Federal Rules of Civil Procedure to judicially confirm its right of ownership of the Recordings as well as the right to commercially exploit the Recordings and the Compositions embodied therein.

As set forth in Larami Corp. v. Amron, 1994 U.S. Dist. LEXIS 9453 (S.D.N.Y. 1994), "in order for an issue to be justiciable under a declaratory judgment claim, there must be 'an actual case or controversy' before the court at the time the suit is filed . . . The remedies available through Rule 57 and 28 U.S.C. § 2201 are intended to afford one threatened with liability an early adjudication before damage accrues from impending litigation, thereby permitting parties to settle matters and controversies before they develop into further violations of law or contractual duties." Larami, at *8-9 citing 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2751.

Specifically, Section 2201 of the Declaratory Judgment Act provides:

> (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

In this case, there is simply no question that there is an actual controversy between the parties that requires judicial intervention pursuant to the Declaratory Judgment Act. Plaintiff

has had, for months, concrete plans, known to the Defendant, to release Recordings embodying Artist's performances that were paid for by Plaintiff and created during the term of the 2005 Joint Venture Agreement (Rowe Aff., Paras 9, 30-33 and Exs. B and C). Despite the clear contractual language granting Plaintiff an undivided fifty (50%) percent ownership interest in the Recordings (Rowe Aff., Para. 10 and Ex. C), Defendant has threatened that it will commence a lawsuit alleging willful copyright infringement if Plaintiff releases the Recordings (Rowe Aff., Paras. 26-28, Exs. F and G). There is no doubt that while such a lawsuit, with the possible backing of Atlantic, would be costly and financially devastating to Plaintiff, recall of the third album at this late date would be equally, and perhaps more, damaging (Rowe Aff., Paras. 30-38).

The law is well-settled that "any threat, direct or indirect, made by the defendant concerning further litigation for . . . infringement will establish the necessary prerequisite controversy to grant the court jurisdiction in a declaratory judgment matter." Larami, at *13. The facts of this case establish an actual controversy that requires judicial intervention pursuant to the Declaratory Judgment Act.

II

## SINCE PLAINTIFF IS A JOINT OWNER OF THE RECORDINGS, DEFENDANT CANNOT MAINTAIN AN ACTION AGAINST PLAINTIFF FOR COPYRIGHT INFRINGEMENT AND, AS SUCH, PLAINTIFF SHOULD BE ESTOPPED FROM COMMENCING ANY SUCH ACTION IN THE FUTURE

It is extremely well settled law that "one joint owner cannot be liable for copyright infringement to another joint owner for the reason that one cannot infringe his own copyright." 1 M. Nimmer, Nimmer on Copyright Section 6.10[A] (2007) ("Nimmer"). This cornerstone principle of copyright law is also well settled law in this district as set forth in Donna v. Dodd, Mead & Co., 374 F. Supp. 429, 430; 1974 U.S. Dist. LEXIS 8907; 183 U.S.P.Q. (BNA) where the Court held that "a joint owner of a copyright and his licensees cannot be liable to a co-owner for copyright infringement, citing Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 266 (2d Cir. 1944), since a copyright owner cannot infringe his own copyright" citing Richmond v. Weiner, 353 F.2d 41 (9th Cir. 1965) cert. denied, 384 U.S. 928, 86 S. Ct. 1447, 16 L. Ed. 2d 531 (1966). Simply stated, despite Defendant's protests and assertions to the contrary, it cannot prohibit Plaintiff, a joint owner of the Recordings, from licensing or commercially exploiting the Recordings.

Plaintiff's only obligation to Defendant, should Plaintiff proceed with the commercial release of the Recordings even against the joint owner's (Defendant's) wishes, is to account to Defendant for proceeds from such commercial exploitation. Nimmer at Section 6.12[A] ("the prevailing rule is that a joint owner is under a duty to account to the other joint owners of the work for a rateable share of the profits realized from his use of the work").

Pursuant to the 2005 Joint Venture Agreement (Rowe Aff., Ex C, para. 2), Plaintiff owns, as a matter of law and fact, an undivided fifty (50%) percent interest in the copyrights to

the Recordings that were created pursuant to that agreement prior to November 17, 2006, the date the term of the 2005 Joint Venture Agreement ended pursuant to the Atlantic/Big Cat Agreement (Rowe Aff., Ex D, para. 1). Defendant cannot, therefore, maintain an action for copyright infringement against Plaintiff for Plaintiff's commercial exploitation of the Recordings.

Nor can Defendant maintain an action for copyright infringement against the Plaintiff for unauthorized use of the Compositions embodied on the previously unreleased Recordings. The mechanical licenses granted to Plaintiff by the Defendant the 2005 Joint Venture Agreement (Rowe Aff., Exs. B and C) for Compositions embodied on the Recordings precludes any claim that the "first use doctrine" bars Plaintiff's release of the Recordings. Opposing counsel's invocation of the "first use doctrine" in its pre-litigation letters to Plaintiff is merely a red herring and inapposite to the facts of this case.[1] In this case, as Defendant has already granted a mechanical license to Plaintiff authorizing the commercial exploitation of the Compositions embodied on the Recordings (Rowe Aff. Exs. B and C, paras. 16(a) and 2 respectively).

This Court should therefore grant declaratory judgment in Plaintiff's favor confirming Plaintiff's ownership interest in the Recordings as well as Plaintiff's right to commercially exploit the all of the Recordings and Compositions and enjoining Defendant from instituting an action for copyright infringement as a result of such commercial exploitation.

---

[1] Under the "first use doctrine," unless and until there is distribution of a copyrighted work to the public in the United States under the authority of the copyright owner (an authorized "first use"), the copyright owner's rights in such musical work remain exclusive and not subject to a third party license. See Nimmer, § 8.04.

In this case however, Defendant has, in both the initial January 20, 2005 joint venture agreement and June 3, 2005 amendment to that agreement, granted to Plaintiff such a license (i.e. mechanical license) giving Plaintiff permission to commercially exploit the Compositions contained on the Recordings.

III

**SINCE THE PARTIES TO THE 2005 JOINT VENTURE AGREEMENT EXPRESSLY ADDRESSED IN THE JOINT VENTURE AGREEMENT THE ISSUE OF OWNERSHIP OF THE COPYRIGHTS IN THE RECORDINGS, SUCH OWNERSHIP SPLIT SURVIVES EVEN THOUGH THE TERM OF THE 2005 JOINT VENTURE AGREEMENT HAS ENDED**

Plaintiff's position that its undivided fifty (50.0%) percent ownership interest in the Recordings continues even after the term of the 2005 Joint Venture Agreement has expired is not only grounded in common sense, but is consistent with the law of the state of Georgia, the applicable law governing such agreement (Rowe Aff., Ex. B, para. 12). As set forth in the Official Code of Georgia Annotated, O.C.G.A. Section 14-8-8 (e) (2007):

> (e) Where property was partnership property under a predecessor partnership, . . . whether [after the termination of partnership] such property is to be considered . . . the separate property of the surviving members of the predecessor partnership shall be determined on the basis of the intention of the parties.

In this case, the parties' intent with respect to ownership of the Recordings is clear. They are joint owners of an undivided fifty (50.0%) percent interest in the copyrights to the Recordings (Rowe Aff., Ex. C, para. 2). There is no agreement between the party or governing statute that should diminish or restrict Plaintiff's ownership rights in the copyrights to the Recordings in any way. This Court should therefore grant Plaintiff's request for a declaratory judgment confirming Plaintiff's ownership rights in the copyrights to the Recordings as well as Plaintiff's right to commercially exploit the Recordings as a joint owner.

IV

## SINCE PLAINTIFF DID NOT DRAFT THE ATLANTIC/BIG CAT AGREEMENT, ANY AMBIGUITIES OR DOUBT AS TO THE TERMS OF THAT AGREEMENT SHOULD BE CONSTRUED IN PLAINTIFF'S FAVOR

Despite the absence of any supporting contractual language, Defendant are expected to assert that the Atlantic/Big Cat Agreement, which terminated the term of the 2005 Joint Venture Agreement, also precludes Plaintiff from commercially exploiting the Recordings or Compositions embodied therein, whether or not those Recordings had been previously released to the public (Rowe Aff. Ex. G).

In a case such as this, where the Defendant is attempting to create an ambiguity or doubt as to the meaning of contractual terms, where no such contractual infirmity exists, such efforts must fail since any ambiguities or doubts should be construed in Plaintiff's favor. Under New York law, the law governing the Atlantic/Big Cat Agreement (Rowe Aff., Ex. D, para. 10(b)), "in cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to the party who had no voice in the selection of the language. Winston v. Mezzanine Invs., L.P., 170 Misc. 2d 241, 250 (N.Y. Misc. 1996) and Cowen & Co. v. Anderson, 76 N.Y.2d 318, 323 (N.Y. 1990) ("even if the language of petitioners' agreements could be considered ambiguous we would construe it most strongly against petitioners and favorably to respondent because petitioners drafted the agreements").

The lack of express contractual provisions restricting Plaintiff's rights with respect to the Recordings, coupled with the undisputed fact that Defendant's agents sought to purchase the unreleased Recordings from Plaintiff (Rowe Aff., Paras. 20-26) as late as August 2007, leave no doubt that Defendant now wants to rewrite the terms of the Atlantic/Big Cat Agreement. Nothing in the express language of the governing agreements revokes or restricts Plaintiff's joint

ownership of the Recordings or revokes the mechanical licenses conveyed by Defendant and Artist to exploit the Compositions contained therein. This Court must therefore grant Plaintiff's request for declaratory judgment confirming Plaintiff's rights to commercially exploit the Recordings and Compositions and preclude Defendant from commencing a copyright infringement action against Plaintiff based on such commercial exploitation.

## CONCLUSION

For these reasons and those described more fully above, Plaintiff respectfully requests that the Court issue a declaratory order in Plaintiff's favor: (a) confirming Plaintiff's undivided fifty (50%) percent ownership interest in the Recordings, whether previously released to the public or not; (b) confirming Plaintiff's right to commercially exploit the Recordings and the Compositions contained therein; and (c) enjoining Defendant, or any of its agents, licenses or licensees from instituting an action for copyright infringement against Plaintiff, or any of its agents, licensees and assignees as a result of Plaintiff's commercial exploitation of the Recordings and the Compositions embodied therein.

Dated:   New York, New York
         September 18, 2007

EISENBERG TANCHUM & LEVY
Attorneys for Plaintiff Big Cat Records, LLC

James E. Doherty (JD 1596)
675 Third Avenue, Suite 2900
New York, NY 10017
(212) 599-0777
JDoherty@etllaw.com

*Of Counsel*
Stewart L. Levy, Esq.
SLevy@etllaw.com