**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

BIG CAT RECORDS, LLC,                        :        07 Civ.

         Plaintiff,                           :

        -against-                             :        **COMPLAINT**

La FLARE ENTERTAINMENT, LLC,                 :

         Defendant.                            :
-----------------------------------------------------------X

       Plaintiff Big Cat Records, LLC, by its attorneys, Eisenberg Tanchum & Levy, for its

complaint alleges as follows.

<u>The Parties</u>

1. Plaintiff Big Cat Records, LLC ("Big Cat") is a limited liability corporation duly organized
   and existing under the laws of the State of Georgia and having its principal place of business
   at 500 Bishop Street, Suite E-5, Atlanta, Georgia 30318. At all relevant times plaintiff Big
   Cat was and continues to be engaged in the business of, among other things, manufacturing,
   distributing and otherwise commercially exploiting phonorecords and other derivatives
   embodying the musical performances of artists.

2. Defendant La Flare Entertainment, LLC ("La Flare") is, upon information and belief, a
   corporation, not a limited liability corporation, existing under the laws of the State of
   Georgia and having its principal place of business at 3021 Oakmont Drive, Douglasville,
   Georgia 30135. Upon information and belief, at all relevant times defendant La Flare was
   and continues to be a company owned and controlled by Radric Davis, a performer
   professionally known as "Gucci-Mane" (the "Artist"), and which loans out Artist's services
   to third parties.

<u>Jurisdiction and Venue</u>

3.  The jurisdiction of this Court is based upon 28 U.S.C. Sections 1331 and 1338(c) in that the controversy arises under an Act of Congress relating to copyright; to wit, the copyright laws of the United States (17 U.S.C. Section 101 *et seq.*) This action, to the extent that it seeks declaratory relief, is also brought under 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure.

4.  Venue is proper under 28 U.S.C. Section 1391(b) in that a substantial part of the events giving rise to the dispute and claims occurred and will occur in the City, State and Southern District of New York.

<u>The Facts</u>

5.  Plaintiff Big Cat and defendant La Flare entered into an agreement dated January 20, 2005, pursuant to which they created a joint venture to distribute master recordings containing the performances of the Artist.

6.  This agreement, subsequently amended in writing by a document dated June 3, 2005, provided that La Flare would provide to plaintiff Big Cat a minimum of one album containing the performances of Artist, and, at plaintiff Big Cat's option, three additional albums of such material.  In addition, plaintiff Big Cat and defendant La Flare would jointly own an undivided fifty percent interest in all the recordings furnished by defendant La Flare in accordance with the terms of the agreement. (The agreement, as amended, is hereinafter referred to as the "Agreement").

7. The Agreement further states that defendant La Flare would provide the recordings to plaintiff Big Cat and that plaintiff Big Cat would contribute the distribution, marketing, promotion and artist-development services for such recordings.

8. Although defendant La Flare did not fully fulfill its obligations under the Agreement, in that it failed to pay for the creation of the recordings, with the result that plaintiff Big Cat undertook this burden, it did, nevertheless, create for plaintiff Big Cat recorded material containing the performances of the Artist sufficient to create multiple albums.

9. On May 25, 2005 plaintiff Big Cat released to the public an album containing Artist's recorded performances entitled," Trap House," followed by the October 2006 release of a second album of Artist's recordings entitled, "Hard To Kill."

10. Both albums enjoyed critical and economic success, especially the second album which spawned the hit single entitled, "Freaky Gurl."

11. In the wake of this success, defendant La Flare and Artist sought a release from his contractual obligations to plaintiff Big Cat so that Artist could have his recordings released by a larger record company.

12. In the Summer 2006, plaintiff Big Cat, at the request of defendant La Flare, entered into negotiations with the Atlantic Recording Corporation ("Atlantic"), a large record company based in New York, New York, and, upon information and belief, part of the Warner Bros. Music conglomerate, to explore the possibility of Atlantic acquiring the rights to Artist's recording services.

13. These negotiations resulted in an agreement being entered into between plaintiff Big Cat and Atlantic dated November 16, 2006 pursuant to which, for purposes of permitting Atlantic to acquire Artist's recording services, the Agreement was "deemed to be terminated" as of

November 17, 2006 and the obligation of La Flare and Artist to record, produce or deliver to plaintiff Big Cat further recordings was extinguished. (the "Atlantic/Big Cat Agreement").

## Nature of Dispute

14. Plaintiff Big Cat has scheduled for September 25, 2007, the release of a third album of recordings embodying the performances of Artist. (the "Third Album").

15. The Third Album will be released under the supervision of New York, New York–based Tommy Boy Entertainment which acts both as the distributor and consultant to plaintiff Big Cat, and uses as its sub-distributor, ADA, which is also based in New York, New York..

16. Defendant La Flare has demanded that plaintiff Big Cat not release the Third Album, threatening to sue plaintiff Big Cat for copyright infringement if plaintiff Big Cat proceeds with its plans.

17. Defendant La Flare, in support of its position, contends that the Atlantic/Big Cat Agreement terminated the joint venture formed by the Agreement and effectively ended plaintiff Big Cat's right to distribute the Third Album or any other recordings embodying the performances of Artist, possibly including even those contained on the first two albums released by plaintiff Big Cat (entitled "Trap House" and "Hard To Kill").

18. Defendant La Flare further argues that some, if not all, of the recordings contained on the Third Album are recordings of compositions that have not been previously recorded and publicly released and that, as a result, a first use license is required from the author of the songs, the Artist, before plaintiff Big Cat can commercially exploit the Third Album.

19. Plaintiff Big Cat refutes defendant La Flare's allegations by noting that the recordings contained on the Third Album were made prior to November 17, 2006 by Artist for plaintiff

Big Cat to distribute, market, and promote as part of the Agreement and, that there is nothing in the Atlantic/Big Cat Agreement which prohibits plaintiff Big Cat from commercially exploiting such recordings or the previously released recordings.

20. Plaintiff Big Cat also notes that La Flare in the Agreement agreed to provide plaintiff Big Cat the licenses required for the use of the songs written by Artist and performed by him in recordings delivered to plaintiff Big Cat pursuant to the terms of the Agreement.

First Claim
(Declaratory Judgment)

21. Plaintiff Big Cat repeats and realleges each and every allegation set forth in paragraphs 1 through 20 hereof with the same force and effect as if fully set for the herein.

22. In order to resolve this controversy, plaintiff Big Cat requests that, pursuant to 28 U.S.C. Section 2201, this court declare the respective rights and duties of the parties in this matter and, in particular, that the court declare that plaintiff Big Cat has the right to commercially exploit all recordings created prior to November 17, 2006, by defendant La Flare embodying the performances of Artist, and that such commercial exploitation shall not constitute acts of copyright infringement.

Proprietary of Declaration

23. An actual case and controversy exists sufficient for this court to declare the rights and remedies of the parties in that there is a dispute between the parties concerning plaintiff Big Cat's rights in certain recordings and whether plaintiff Big Cat can commercially exploit such recordings without exposing itself to liability to defendant La Flare.

24. Plaintiff Big Cat has the requisite standing to request this declaration since it is the party which will be liable to defendant La Flare in the event that defendant La Flare prevails on its claims of copyright infringement.

25. This controversy is ripe for determination at this time because: (a) plaintiff Big Cat's release of the Third Album is scheduled for September 25 , 2007, and any delay in such release will have devastating effects both on the viability of the recording in the marketplace, and on the ability of plaintiff Big Cat to continue to operate its business; (b) defendant La Flare has given plaintiff Big Cat notice that it intends to commence litigation against plaintiff Big Cat accusing it of copyright infringement if plaintiff Big Cat releases the Third Album; and (c) plaintiff Big Cat continues to exploit its previously released first and second albums consisting of Gucci Mane recordings.

Second Claim<br>(Estoppel)

26. Plaintiff Big Cat repeats and realleges each and every allegation set forth in paragraphs 1 through 25 hereof with the same force and effect as if fully set for the herein.

27. As a result of the foregoing, defendant La Flare is estopped from commencing a civil action against plaintiff Big Cat as a result of Big Cat's release of the Third Album or any other recordings containing Artist's performances that were created pursuant to the Agreement prior to November 17, 2006.

WHEREFORE, Plaintiff Big Cat Records, LLC prays that this court:

A. renders a declaratory judgment providing that plaintiff Big Cat Records, LLC has the right to commercially exploit all recordings created prior to November 17, 2006, by defendant La Flare embodying the performances of Artist and that such commercial exploitation shall not constitute acts of copyright infringement.

B. enters an order enjoining defendant La Flare Entertainment, LLC, or any of its agents, licensees, representatives or assignees, from commencing a civil action against plaintiff Big Cat Records, LLC, or any of its agents, licensees, representatives or

assignees based on plaintiff's commercial exploitation of the Third Album or any

other recordings of Artist created prior to November 17, 2006.

C. awards plaintiff Big Cat Records, LLC its costs and disbursements incurred in this

suit, together with a reasonable allowance for counsel fees as provided by Section 505

of the Copyright Act, 17 U.S.C. Section 505.

D. grants such other and further relief as the court may deem just and proper.


Dated: New York, New York
       September 18, 2007


                    EISENBERG TANCHUM & LEVY
                    Attorneys for plaintiff Big Cat Records, LLC

                    By: _____
                          Stewart L. Levy (SLL-2892)
                    675 Third Avenue
                    New York, New York 10017
                    (212) 599-0777
                    Email: Slevy@etllaw.com

**<u>EXHIBIT B</u>**

**BIG CAT RECORDS, LLC**
**500 Bishop Street**
**Suite E-5**
**Atlanta, Georgia 30318**

As of January 20, 2005

Radric Davis
La Flare Entertainment, LLC
1784 Flintwood Drive
Atlanta, Georgia 30316

Re:    **Big Cat Records, LLC -w- LaFlare Entertainment, LLC**
       **f/s/o Radric Davis p/k/a "Gucci-Mane"/Joint-Venture Deal Memo**

Gentlemen:

The following represents the material terms of an exclusive joint-venture ("Venture") agreement ("Agreement") between Big Cat Records, LLC ("Company") and LaFlare Entertainment, LLC ("Venture Partner").

1.    <u>Purpose.</u>  Company and Venture Partner agree to "joint-venture" the world-wide distribution of master recordings ("Masters") of the recording artist, Radric Davis p/k/a "Gucci-Mane" ("Artist"). Venture Partner will perform A&R services and provide fully-recorded and mixed "first-class" Masters featuring performances of Artist. Company will contribute distribution, marketing, promotion and artist-development services.

2.    <u>Territory.</u>  The Universe.

3.    <u>Term/Album Commitment.</u>  Three and one-half (3½) years per Album. One (1) initial Album entitled, "So Icy" with the first Single also entitled, "So Icy" plus Company shall have the right (but not the obligation) to option an additional Album (two (2) Albums in total).

4.    <u>Signing Advance.</u>  Company shall pay to Venture Partner a fully-recoupable signing bonus advance of $50,000 ("Signing Advance") as follows: (a) one-half (½) or $25,000 upon full execution of this Agreement; and (b) the balance of $ 25,000 payable

Initials: _____    _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 2

following full and complete delivery to and acceptance by Company and Distributor (including, all sample clearances).

5. <u>Promotion/Artist Development/Marketing Budget.</u> Company, in its sole discretion, shall allocate up to $250,000 as needed, for the purposes of promotion, co-op advertising, marketing, artist development, videos, etc. Notwithstanding the forgoing, Company shall also pay the Signing Advance of $50,000 to Venture Partner from the above budget thereby reducing said budget to $200,000.

6. <u>Venture Partner Obligations.</u> Venture Partner shall be solely responsible for paying all recording costs (including producer advances and fees) and all third-party advances, artist advances and artist royalties payable to Artist and third-parties pursuant to the Artist Agreement. Each Album will feature the newly-recorded performances of Artist.

7. <u>Company Services.</u> Company shall provide its promotion, marketing, artist development and administrative resources to the Venture for a services fee of five (5%) percent of Gross Receipts. Company shall provide distribution functions to the Venture for a "pass-thru" distribution fee. Company shall also provide manufacturing functions to the Venture for a "pass-thru" manufacturing fee (not to exceed $1.25 per unit).

8. <u>Division of Net Profit.</u> Company agrees that the Venture shall be authorized to pay to Venture Partner thirty (30%) percent of the Net Profit realized from the sales of the first 100,000 units sold of these recordings following Company's recoupment of the Venture Partner Advances and fifty (50%) percent of the Net Profit realized from the sales units sold thereafter. "Net Profit" is defined as Gross Receipts (gross sales actually received less current returns, credits, rebates, etc.) less all "Payments" necessary to manufacture, distribute, market, sell and promote those records and any other payments. Payments include, but are not limited to:

    (a)    <u>Distribution Expenses.</u>
           Payment Discount
           Distribution Expenses and Fees
           Dealer Advertising
           Dealer Discounts
           Invoice Dating Charges

    (b)    <u>Manufacturing Expenses.</u>
           Packaging Concept and Design
           Color Separations
           Mastering
           Pressing
           Container/Jackets

Initials: _____  _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 3

       Manufacturing of Returns
       AF of M Union Contributions
       Other customary expenses

(c)   <u>Marketing, Sales, and Promo Services Expenses</u>
       Manufacturing of Promotional Units
       Mailing & Freight on Promotional Units
       Concept, Design & Manufacturing of Point of
           Purchase Materials
       Manufacturing of Sales Promotional items
       Independent Promotion
       Publicity
       Artist Development
       Services Fees
       Trade and Consumer Advertising
       Other customary expenses

9.   <u>Marketing/Budgetary Procedure.</u>  Company shall consult with Venture Partner on all marketing/promotion/budgetary decisions, provided, in the event of a dispute, Company's good-faith decision shall prevail. Venture Partner shall have creative control with respect to: A&R, artwork, video concept and storyboard and musical direction of Artist.

10.   <u>Mechanical Royalties.</u>  For U.S. and Canada, Venture shall pay mechanical royalties at 75% of the applicable minimum statutory rate per selection at the rate effective on the date of release of the Masters concerned. The maximum aggregate mechanical royalty rate payable by Venture shall be two (2) times the above rate for any single containing two (2) songs and ten (10) times the above rate for any LP with at least ten (10) selections and eleven (11) times the above rate for CDs with at least eleven (11) selections. Venture Partner shall bear ultimate responsibility for payment of mechanical royalties. Artist agrees to indemnify and hold Company and Distributor harmless for the payment of mechanical royalties in excess of the applicable amounts in the provisions of this paragraph 9 (and the corresponding provisions of the Distribution Agreement). If Company pays or is charged by the Distributor for any such excess, Company may recover such excess from royalties or any other payments due Venture Partner and/or Artist hereunder.

11.   <u>Accounting.</u>

    (a)   Company, will render accountings and any payment due thereon to Venture Partner on within thirty (30) days after receipt from Distributor at the close of each accounting period; and

Initials: _____    _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 4

(b)    Company shall "pass through" the reserve and liquidation provisions of the Distribution Agreement.

(c)    Venture Partner shall have the right to appoint a Certified Public Accountant, who is not then currently engaged in an outstanding audit of Company, to examine Company's books and records relating to the sale and other exploitations of records hereunder provided that such examination shall take place at Company's offices during normal business hours, on reasonable written notice, at Venture Partner's sole cost and expense. Such examination may be conducted only once with respect to any particular statement, and not more frequently than once in any calendar year. Venture Partner shall cause Venture Partner's accountant to deliver a copy of his audit report to Company within three (3) months after the completion of said accountant's examination of Company's books and records. The rights granted herein to Venture Partner constitutes Venture Partner's sole right to examine Company's books and records.

12.    <u>Applicable Law.</u>  The Laws of the State of Georgia shall apply.

13.    <u>Exclusive License.</u> Venture Partner hereby irrevocably grants to Company an exclusive license, in all Master Recordings by Artist hereunder during the Term and for a sell-off period of one (1) year after the Term.

14.    <u>Right of First Refusal/Matching Right.</u> Venture Partner hereby irrevocably grants to Company an exclusive right of first negotiation for the first Album featuring newly recorded Master Recordings by Artist <u>after</u> the Term of this Agreement ("Post-Term Album") as well as a matching right for the Post-Term Album if Company and Venture Partner initially fail to negotiate mutually-agreeable terms for the Post-Term Album.

15.    <u>Letters of Inducement.</u>  Venture Partner and Artist hereby agree to duly execute the letter of inducement attached hereto as Exhibit "A" that is required.  In the event that Artist and/or Venture Partner shall fail or refuse to execute any such letter of inducement within five (5) days after Company requests that Venture Partner and Artist do so, Venture Partner and Artist hereby appoint Company as Venture Partner's and Artist's true and lawful attorney-in-fact to execute such letter of inducement in Venture Partner's and Artist's name and on Venture Partner's and Artist's behalf.

16.    <u>Warranties and Representations.</u>

(a)    Venture Partner warrants and represents that: (i) Venture Partner is under no disability or restriction regarding (A) Venture Partner's right to enter into this Agreement, and (B) Venture Partner's right to grant the rights granted to Company hereunder, to perform each and every term and provision hereof, and to record each

Initials: _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 5

Composition hereunder; (ii) Venture Partner agrees to deliver to Company all necessary assignments of copyrights, mechanical licenses, label copy, copyright information, "sample" clearances, producer agreements, "song-split" agreements and other information required to manufacture, market, distribute and sell records; (iii) Company shall not be required to make any payments of any nature for, or in connection with the acquisition or exploitation of rights by Company pursuant to this Agreement, except as specifically provided in this Agreement; (iv) Venture Partner has had a full opportunity to have this document reviewed, and its legal effects explained by an independent attorney of Venture Partner's choice, who is knowledgeable in the entertainment and recording industries; (v) Venture Partner's services and the rights granted to Company are unique such that the loss and determination thereof could not be adequately compensated in money damages; accordingly, in addition to its other rights and remedies, Company shall be entitled to seek equitable relief to prevent or minimize any such actual or threatened loss or diminution; and (vi) Venture Partner will indemnify Company and hold Company harmless from and against any losses and damages (including reasonable attorneys' fees actually incurred) arising out of any claim by any third party which is inconsistent with any warranty, representation, promise or covenant herein made by Venture Partner hereunder which has been reduced to a final judgment or settled with Venture Partner's consent, not to be unreasonably withheld. Upon the making or filing of any such claim, action or demand, Company or Distributor shall be entitled to withhold from any amounts payable under this Agreement such amounts as are reasonably related to the potential liability in issue; provided, Company shall not withhold such sums if Venture Partner post a bond in a form and with a bonding company reasonably acceptable to Company. Monies withheld from Venture Partner by Company pursuant to the foregoing provisions of this paragraph 15 in connection with any claim, demand or action shall be credited to Venture Partner's royalty account hereunder for payment, if any, if and to the extent that litigation of that claim, demand or action is not commenced and active settlement discussions are not then taking place as of the date one (1) year after the date on which those monies are initially withheld (subject to Company's right to future additional withholding if litigation of that claim, demand or action is actually commenced).

    (b)    Company warrants and represents that: (i) it is under no disability or restriction regarding (A) its right to enter into this Agreement, and (B) its right to grant the rights granted to Venture Partner hereunder, to perform each and every term and provision hereof; and (ii) Company will indemnify Venture Partner and hold Venture Partner harmless from and against any losses and damages (including reasonable attorneys' fees actually incurred) arising out of any claim by any third party which is inconsistent with any warranty, representation, promise or covenant herein made by Company hereunder and has been reduced to a final judgment or settled with Company's consent, not to be unreasonably withheld.

Initials: 

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 6

      (c)     The rights conveyed to Company hereunder apply throughout the Territory. Venture Partner and Artist grant Company and its designee(s) the rights throughout the Territory to use and authorize the use of Venture Partner's and Artist's name(s) (professional, legal and otherwise), approved likenesses, approved biographical information and other approved identifying features ("ID Materials") in connection with Venture Partner's recordings and Company's record related business, such rights will be exclusive during the Term and non-exclusive thereafter. During the Term, Venture Partner will not permit any third party to record any of Venture Partner's and/or Artist's performances or to use Venture Partner's and Artist's name or ID Material(s) on or in connection with phonograph records or the recordings (whether embodying sound alone or sound coupled with a visual image) embodying Venture Partner's and/or Artist's performances.

      (d)     Company may assign this Agreement to the Distributor, to any third party or to any subsidiary, affiliated or controlling corporation, or to any Person owning or acquiring a substantial portion of the stock or assets of Company. Company may also assign its rights hereunder to any of its Licensees to the extent necessary or advisable in Company's sole discretion to implement the license granted. Venture Partner may not assign this Agreement or any of Venture Partner's rights hereunder and any such purported assignment shall be void.

      (e)     The parties intend to negotiate in good-faith a more formal agreement ("More Formal Agreement") in Company's then customary form for agreements of this type, which More Formal Agreement shall contain all of the provisions of this Agreement, as well as other standard terms ("Standard Terms"), such as Artist's representations and warranties, re-recording restrictions, video provision, etc. Without limitation, Venture Partner and Artist agree that Company may require that the Standard Terms reflect any customary comparable provisions (e.g., as to duration of the Initial Period and Option Period, etc.) required by Distributor. Unless and until the More Formal Agreement is fully executed, this letter, after it is signed on behalf of Company and Venture Partner and Artist below, shall be the complete, legally binding Agreement between Company and Venture Partner and Artist with respect to Artist's recording services and the other subject matter hereof. (This Agreement may be signed and delivered in counterparts which, when taken together, shall be deemed a fully executed complete version of the Agreement.

Initials: _____  _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 7

If this letter correctly reflects our agreement, please sign where provided below.

AGREED AND ACCEPTED:        Very truly yours,

LAFLARE ENTERTAINMENT, LLC      BIG CAT RECORDS, LLC

By: _____      By: _____
     **Authorized Signatory**             **Authorized Signatory**

EIN#: _____

*(Notary seal: COLLEEN VALENTINE, MY COMMISSION EXPIRES, SEPT 24 2006, FULTON COUNTY GA, NOTARY PUBLIC)*

Sworn and Subscribed before me on this 25th day of January 2005.

*Colleen Valentine*

Initials: _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 8

## EXHIBIT A

### ARTIST INDUCEMENT LETTER
to The Agreement
Dated As Of January 20, 2005
Between
**BIG CAT RECORDS, LLC**
and
**LAFLARE ENTERTAINMENT, LLC**

Big Cat Records, LLC
500 Bishop Street
Suite E-5
Atlanta, Georgia 30018

Gentlemen:

Reference is made to the foregoing agreement between me and LaFlare Entertainment, LLC (hereinafter call "Venture Partner") relating to my exclusive services as a recording artist ("said agreement").

Reference is further made to the agreement between you and Venture Partner dated as of January 20, 2005 (the "Big Cat Agreement").

In order to induce you to pay good and valuable consideration inuring to my benefit under the Big Cat Agreement, I hereby agree as follows:

1.     Subject to the terms, conditions and restrictions of the Big Cat Agreement, we hereby grant you all of the rights and remedies granted by me in said agreement and agree to perform all of the obligations therein undertaken to be performed by me for your benefit as though you were a party to said agreement. I agree that you shall have the right in addition to any other remedies available to you at law or in equity or by reason of this Agreement or said agreement to specifically enforce said agreement against me. No notice need be given to me of any modification or waiver of the provisions of said Agreement for the purposes of your enforcing said agreement or this Agreement against me.

2.     Without limiting any of the rights granted to Venture Partner in said agreement, I hereby grant you the right to use and publish and to permit others to use and publish my name, likeness and all biographical material concerning me and to permit others to write

Initials: _____    _____

Radric Davis
LaFlare Entertainment, LLC
As of January 20, 2005
Page 9

and publish articles concerning me for advertising or trade purposes in connection with the sale and exploitation of my records.

3.      I agree that I will look solely to Venture Partner for the payment of all monies payable to me by reason of rendering my services in accordance with said agreement, and I agree that you shall have no responsibility to me therefor whatsoever.  No breach by Venture Partner of said agreement or any agreements which I may now or from time to time have with Venture Partner shall be sufficient cause for my failure or refusal to fully perform for you in accordance with said agreement and this Agreement.  Should Venture Partner fail or refuse to produce recordings by me for you pursuant to said agreement or if Venture Partner should cease to be entitled to my services for any reason during the term of said agreement, you shall have the right to designate the producers of such recordings who shall render their services at the expense of Venture Partner, and I shall render my services with such producers directly for you.

4.      I agree to fully render my performances for you and Venture Partner in accordance with said agreement for so long as said Agreement shall be in effect. I further agree that for so long as said agreement shall be in effect I will exclusively render my performances for you and Venture Partner in connection with the production of records, and I will not perform in any capacity whatsoever (individually or as part of a group or otherwise) for any other person, firm or corporation for the purpose of making records.

5.      In the event of the breach or threatened breach of any term hereof or of said agreement by me, I agree that you shall be entitled to injunctive relief in addition to any other rights or remedies available to you.  It is agreed that my services for the purpose of recording records pursuant to said agreement and this Agreement are of a special, unique and extraordinary character.

6.      I warrant and represent that I have the right to enter into this Agreement, and that I have the right to grant you all of the rights granted in said agreement and in this Agreement, and that neither this Agreement nor said agreement nor any performance of mine thereunder shall be in violation of the rights of any third party.

7.      I agree to indemnify you and hold you harmless from and against any liability, loss, damage, cost or expense including reasonable legal fees paid or incurred by you by reason of any breach or threatened breach by me or failure of the covenants, representations or warranties contained herein or in said agreement.

8.      THIS AGREEMENT AND SAID AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF GEORGIA AND THE VALIDITY, CONSTRUCTION, PERFORMANCE AND BREACH OF THIS AGREEMENT AND SAID AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF GEORGIA APPLICABLE

Initials: _____

Except and to the extent amended and modified pursuant to this Amendment, the Agreement shall remain in full force and effect.

If the foregoing accurately reflects your understanding, please indicate your acceptance and agreement by executing below.

Very truly yours,

BIG CAT RECORDS, LLC

By: _____
    Authorized Signatory

AGREED AND ACCEPTED:

LaFlare Entertainment, LLC
By: _____
    Authorized Signatory

AGREED AND ACCEPTED:
AS IT PERTAINS TO ME:

Radric Davis

By: _____

2

Initials _____ _____

**EXHIBIT C**

**BIG CAT RECORDS, LLC**
**500 Bishop Street**
**Suite E-5**
**Atlanta, Georgia 30318**

June 3, 2005

Radric Davis
La Flare Entertainment, LLC
1784 Flintwood Drive
Atlanta, Georgia 30316

RE:     **Big Cat Records, LLC -w- LaFlare Entertainment, LLC**
**f/s/o Radric Davis p/k/a "Gucci-Mane"/Joint-Venture Deal**
**Memo, dated as of January 20, 2005 (the "Agreement")**

Gentlemen:

Reference is made to the Joint-Venture Deal Memo, dated as of January 20, 2005 between Big Cat Records, LLC and LaFlare Entertainment, LLC (the "Agreement"). All terms defined in the Agreement shall have the same definitions herein.

We hereby agree to amend the Agreement with this letter agreement (the "Amendment") as follows:

1.      **Paragraph 3** shall be amended to read as follows. Term/Album Commitment. One (1) initial Album entitled, "So Icy" with the first Single also entitled, "So Icy" plus Company shall have the right (but not the obligation) to option three (3) additional Album (four (4) Albums in total).

2.      **Paragraph 13** previously entitled, Exclusive License., shall be deleted and replaced with the following provision: Ownership of Masters. Venture Partner hereby assigns, transfers, conveys and sells to Company an undivided fifty (50%) percent interest in all of Venture Partner's right, title and interest in all Master Recordings by Artist. Venture Partner agrees to deliver to Company all necessary assignments of copyrights, mechanical licenses, label copy, copyright information, "sample" clearances and other information required to manufacture, market, distribute and sell records. Company shall have the exclusive and perpetual right to use Artist's approved name and likeness in connection with Company's exploitation of records embodying Artist's performances and for Company's or Distributor's "good-will" advertising.

1

Initials R D

Except and to the extent amended and modified pursuant to this Amendment, the Agreement shall remain in full force and effect.

If the foregoing accurately reflects your understanding, please indicate your acceptance and agreement by executing below.

Very truly yours,

**BIG CAT RECORDS, LLC**

By: _____
Authorized Signatory

**AGREED AND ACCEPTED:**

LaFlare Entertainment, LLC

By: _____
Authorized Signatory

**AGREED AND ACCEPTED:
AS IT PERTAINS TO ME:**

Radric Davis

By: _____

2

Initials _____