Donald S. Zakarin (DZ-6355)
Anika Lewis (AL-2005)
PRYOR CASHMAN LLP
410 Park Avenue, 10th Floor
New York, New York 10022-4441
(212) 421-4100

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BIG CAT RECORDS, LLC,                              :    07 Civ. 8161 (BSJ)
                                                                     :
                 Plaintiff,                            :
                                                                     :
   -against-                                             :
                                                                     :
La FLARE ENTERTAINMENT, LLC,         :
                                                                     :
               Defendant.                         :
------------------------------------------------------------X


## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN EXPEDITED HEARING


PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
(212) 421-4100
*Attorneys for Defendant*

*Of Counsel:*
    Donald S. Zakarin
    Anika Lewis

La Flare Entertainment, LLC ("La Flare") respectfully submits this memorandum of law in opposition to Big Cat Records, LLC's ("Big Cat") motion for an expedited hearing. Big Cat has now effectively withdrawn its motion (because it has instead elected to persevere with its distribution of an album - and a DVD - that it has long known it had no contractual right to distribute and which it also has long known infringes the copyrights in Gucci Mane's underlying musical compositions). However, because the law so clearly confirms that the arguments made by Big Cat to this Court were baseless, La Flare is nonetheless submitting this Memorandum.

## PRELIMINARY STATEMENT

This lawsuit is a bad faith effort by a record label to obtain this Court's permission to sell music that it both does not own and is contractually prohibited from distributing. Big Cat commenced this action for expedited relief on September 18 knowing that it was going to proceed with its September 25 release of a new album by the recording artist known as Gucci Mane regardless of whether it secured a ruling from the Court that it lawfully could do so. In truth, Big Cat has known for months that, unless La Flare approved and granted licenses for the release, the new album would infringe Gucci Mane's copyright interests in the musical compositions recorded on the album and breach Big Cat's fiduciary and contractual obligations to La Flare[1] This lawsuit was simply Big Cat's cynical attempt to misuse this Court to fabricate

---

[1] As explained at the hearing on September 21, 2007, a record company requires two different copyrights in order to manufacture and distribute phonorecords. It requires either copyright ownership or a copyright license in the sound recording (which is the recorded performance of an artist) and it also requires copyright ownership or a copyright license in the underlying musical composition which is performed by the artist on the recording. Typically, a record company will acquire copyright ownership of the sound recordings. However, also typically, a record company only obtains licenses to make recorded performances of the underlying musical compositions. The license to mechanically reproduce the musical composition (to record the composition and embody it on a phonorecord) is called a mechanical license. Both rights are necessary. Thus, it does not matter if the record company owns the copyright in the sound recording if it does not have a mechanical license from the owner of the copyright in the musical composition. The manufacture and distribution of the phonorecords without a mechanical license for each of the recordings on the album is a copyright infringement of the copyright in the musical compositions.

2

an argument that Big Cat's actions do not constitute willful copyright infringement.

The agreement at the heart of this case – the joint venture agreement between Big Cat and La Flare (Gucci Mane's loan out company) dated as of January 20, 2005 and amended on June 3, 2005 (the "Joint Venture Agreement") – clearly and unambiguously vests in La Flare complete control over, among other things, which Gucci Mane recordings may be released, the artwork and other packaging for any Gucci Mane albums and the artist's overall "musical direction." (Joint Venture Agreement ¶ 9) Although the Amendment of the Joint Venture Agreement provides that La Flare "**hereby assigns, transfers, conveys and sells**" to Big Cat one-half of its "right, title and interest in all Master Recordings by [Gucci Mane]," the very same provision of the Amendment merely states that La Flare "**agrees to deliver to [Big Cat] all necessary . . . mechanical licenses**" that would enable Big Cat to exploit the musical compositions embodied in those recordings. (Id. ¶ 13 (as amended)) It is undisputed that Big Cat entered into an agreement with Atlantic Recording Corporation ("Atlantic") dated as of November 16, 2006 (the "Termination Agreement") terminating the term of the Joint Venture Agreement and that, since that date, La Flare has not approved or granted any mechanical licenses for the release of any new Gucci Mane recordings (or any artwork therefor). It also is undisputed that, notwithstanding the absence of any such approval or licenses, Big Cat released a new Gucci Mane album entitled "Trap-A-Thon" (the "New Album") on September 25.[2]

Because Big Cat's distribution of the New Album constitutes a breach of both its fiduciary duty and contractual obligations to La Flare if the Joint Venture Agreement continues

---

[2] In this regard, this Court may wish to listen to track 14 on the album Big Cat furnished to this Court on Friday, September 21, 2007. This track is not a Gucci Mane recording. Rather, it is a vile dialogue apparently between Big Cat's owner and someone else talking about how they bested Atlantic Records and have exploited and taken advantage of Gucci Mane. Beyond libeling Gucci Mane and plainly attempting to harm his career at Atlantic, it is obviously not a recording that was ever authorized by Gucci Mane to be contained on any album of his. This is precisely why La Flare insisted on complete creative control over the contents of any album that Big Cat might ever put out.

to apply to the assets of the joint venture, Big Cat has adopted the manifestly untenable position that the agreement has ceased to exist.[3] And, to avoid copyright liability for its exploitation of the musical compositions embodied on the New Album, Big Cat contends that the language **"agrees to deliver...mechanical licenses"** in the Joint Venture Agreement somehow constitutes a fully-executed conveyance of mechanical licenses despite its clear executory language and the fact that there was no extant album to be licensed at the time of the termination of the term of the Joint Venture Agreement. Big Cat's arguments are refuted by the language of the Joint Venture Agreement and by applicable law.

First, even assuming Big Cat co-owns all of the Gucci Mane recordings on the New Album (and it does not),[4] the plain language of Paragraph 9 of the Joint Venture Agreement flatly prohibits the company from releasing the album without La Flare's prior approval, which it admittedly failed to obtain. Second, longstanding Georgia law – which governs here by virtue of the choice of law clause in the Joint Venture Agreement – clearly holds that the language by which La Flare promises to deliver mechanical licenses under the agreement constitutes an executory contractual obligation, not an executed conveyance.

Consequently, Big Cat has no right to distribute the New Album either because it failed to obtain mechanical licenses for the compositions (if the Joint Venture Agreement has ceased to apply) or never received La Flare's approval in accordance with the agreement(if the agreement continues to apply). Indeed, even if the Joint Venture Agreement continues to apply (as La Flare contends), Big Cat would still not have received any mechanical licenses as Gucci Mane's

---

[3] Of course, Big Cat cannot possibly argue otherwise because if the Joint Venture Agreement survives, La Flare has the sole and exclusive right to determine, among other things, (i) what Gucci Mane recordings will be released to the public; (ii) the order and other presentation of the recordings on any albums offered for sale; and (iii) the artwork for the albums.

[4] La Flare's preliminary review of the New Album indicates that at least some of the sound recordings were created before the Joint Venture Agreement while others were created after the termination of its term. As such, it appears that Big Cat is infringing the copyrights in both sound recordings and musical compositions embodied in the New Album.

obligation to deliver such licenses would only apply to master recordings La Flare had properly authorized for public distribution. The master recordings on the New Album were never authorized.

At this juncture of this case (even before La Flare has responded to the complaint), this Court requested briefing solely on the issue of whether the "agrees to deliver" language constitutes an executed conveyance of mechanical licenses as Big Cat claimed or is only an executory contractual obligation that exists only if the Joint Venture continued to apply to the property of the joint venture (a position disdained by Big Cat). La Flare submits this Memorandum of Law directed to the foregoing issue. As will be shown below, for more than 100 years, under well-established Georgia law (the law applicable to this dispute in accordance with the Joint Venture Agreement), the precise language employed in the Joint Venture Agreement, **"agrees to deliver,"** has been held to be an executory obligation, not an executed conveyance. Thus, Big Cat has no right to distribute the album it has now elected to release on September 25, 2007 either because it lacks any mechanical licenses (if the Joint Venture Agreement has ceased to apply) or because it lacks the contractual authorization of La Flare in accordance with Paragraph 9 (if the Joint Venture Agreement continues to apply). Either way, Big Cat's release and distribution of the album is impermissible and Big Cat knew full well when it decided to place this album in commerce that it had no right to do so.

## FACTS

The contractual provisions and facts relevant to the limited issue presented for consideration by this Court are fully set forth and analyzed in the affirmation of Donald Zakarin dated September 20, 2007 ("Zakarin Aff.") and the affidavit of Michael Kushner dated September 20, 2007 ("Kushner Aff."). Rather than repeating at length what this Court has

already reviewed, La Flare respectfully refers the Court to such affidavit and affirmation for the full analysis of the relevant contracts and facts.

To summarize the critical points set forth therein, however, it is La Flare's position, consistent with the express language of the Atlantic Records/Big Cat Agreement and the Joint Venture Agreement, as amended, between La Flare and Big Cat, that just as the joint venture continues to exist with respect to the assets of the joint venture (master recordings), the Joint Venture Agreement continues to govern the relationship of the joint venturers with respect to such assets.

Pursuant to Paragraph 9 thereof, La Flare has the exclusive right to determine whether and when a recording has been satisfactorily completed (and is no longer a work in process) and it has the sole and exclusive right to determine what recordings will be made available for public distribution (on record albums or single releases). La Flare also has the sole and exclusive right to determine the artwork for any album. In turn, Big Cat has control over the marketing, promotion and distribution of the recordings La Flare determines to make available for public distribution, all on behalf of the joint venture.

With respect to those recordings that La Flare determined to make available for public distribution and that Big Cat agreed to distribute (under the Joint Venture Agreement, as amended, Big Cat had no obligation to distribute any albums after the first Gucci Mane album; it merely had options to distribute three additional albums), La Flare "agrees to deliver….mechanical licenses." Thus, with respect to any recordings that La Flare decided to make available for public distribution and that Big Cat agreed to distribute (by exercising its options), Big Cat would be assured of having mechanical licenses for the underlying compositions. But before there could be any issuance of mechanical licenses, La Flare would

have to have approved of and authorized the public distribution of the recordings of the musical compositions because otherwise there was nothing to mechanically license.

It is undisputed that during the term of the Joint Venture Agreement, La Flare authorized the public distribution of two albums and Big Cat released and distributed two albums, having agreed to distribute the first album and having exercised its option for the second. There is also no dispute that these two albums were properly mechanically licensed in accordance with the terms of the Joint Venture Agreement. As of the time of the Atlantic Record/Big Cat Agreement, no other albums or recordings had been optioned and no other mechanical licenses had been sought or issued. It is La Flare's position that, by virtue of the termination of the term of the Joint Venture Agreement, Big Cat's remaining options to distribute any additional albums was eliminated. While the terms of the Joint Venture Agreement continue to apply to all of the property of the joint venture (the master recordings), Big Cat has no further right to release any additional recordings. As set forth in the Kushner Affidavit, that was the clear and understood intention of the Atlantic Records/Big Cat Agreement.

As set forth in Big Cat's motion and as argued by its counsel, Stewart Levy, at the hearing on September 21, 2007, it is Big Cat's position that it is no longer bound by any of the restrictions or limitations of the Joint Venture Agreement because the Atlantic Records/Big Cat Agreement terminated not merely the term of the Joint Venture Agreement but the agreement itself. Therefore, according to Big Cat, it is no longer encumbered by the restrictions of Paragraph 9 and it can, unfettered by the exclusive rights of La Flare, release any recordings it wishes. It can combine one or more recordings with any other recordings. It can take partial recordings that Gucci Mane was simply working on, no matter what their state of completion (and no matter if such recordings would even expose him to ridicule and harm his career) and

7

publicly distribute them on new albums. In fact, as shown by Track 14 on the album it has now released, it can actually ridicule both Gucci Mane and Atlantic and boast of having fleeced both of them financially and otherwise (and this on an album presumably to be purchased by fans of Gucci Mane).

The problem with Big Cat's position, as noted at the hearing on September 21, 2007, is that its co-ownership of the master recordings is insufficient to enable it to manufacture and distribute Gucci Mane recordings. It also requires mechanical licenses for the underlying musical compositions recorded on this and any other album (except for the two released and distributed during the term of the Joint Venture Agreement). Big Cat solved this problem in its motion papers by misrepresenting the language of the Joint Venture Agreement as it pertained to the obligation imposed on La Flare and Gucci Mane to issue mechanical licenses. According to its papers, the language of the agreement "granted" mechanical licenses.

In fact, however, as shown in the Zakarin Affirmation, the language of the Joint Venture Agreement respecting mechanical licenses is quite different than the conveyance language for the master recordings (and quite different than represented by Big Cat in its motion papers). Whereas La Flare **"hereby assigns"** a co-ownership interest in the copyrights in the master recordings, it merely **"agrees to deliver....mechanical licenses"** [for the underlying musical compositions].[5] But as will be shown below, even absent the striking difference in the language employed, the effect of this language is clear as a matter of law. This is because, under applicable law, the "agrees to deliver" language is an executory contractual obligation that only exists under the Joint Venture Agreement. If the Joint Venture Agreement does not exist as Big

---

[5] La Flare contends that the "agrees to deliver" language is, on its face, clearly an executory contractual obligation that exists only if the contract exists. In fact, as will be shown below, the Georgia Supreme Court has actually had occasion to consider an argument similar to that raised by Big Cat involving exactly the same "agrees to deliver" language. The Georgia Supreme Court ruled that such language was not an executed conveyance but simply an executory contractual obligation.

8

Cat contends, then its release and distribution of the Gucci Mane album is unlicensed and is a copyright infringement of the underlying musical compositions.

## ARGUMENT

### THE JOINT VENTURE AGREEMENT CONCLUSIVELY ESTABLISHES THAT BIG CAT HAS NO RIGHT TO DISTRIBUTE ANY GUCCI MANE RECORDINGS EXCEPT THE TWO ALBUMS IT DISTRIBUTED DURING THE TERM OF THE AGREEMENT

The construction of a contract is a question of law for the Court based on the intent of the parties as set forth in the contract. Chowhan v. Miller, 283 Ga.App.749, 750 (Ct. of App. 2007) (citations omitted). In construing a contract the court must first decide if the contract language is ambiguous. Toy Wright Ventures, LLC v. Radlo Foods, LLC, 281 Ga.App.278, 279 (Ct. of App. 2006) (citations omitted). Language is unambiguous if it is capable of only one reasonable interpretation. Id. Only if the contract contains an ambiguity does the Court then apply the rules of statutory construction. Id. Where, however, the language of the contract is plain, the rules of construction have no application and the court must give meaning to the contract, as written, even if one party contends that he understood the contract to mean something else. Atlanta MultiSpecialty Surgical Ass., LLC v. DeKalb Medical Center, Inc., 273 Ga.App.355, 356 (Ct. of App. 2005).

In determining the intent of the parties the entire agreement should be looked to in arriving at the construction of any part. DBL Inc. v. Carson, 284 Ga.App.898, 904 (Ct. of App. 2007) (citations and quotation omitted). Further, the language used must be afforded its literal meaning and plain ordinary words given their usual significance. Id.

As we now demonstrate, it is plainly apparent from the face of the Joint Venture Agreements that Big Cat has no authority to release the New Album because (i) it failed to obtain La Flare approval for the release; and (ii) it never obtained mechanical licenses to exploit

9

the musical compositions embodied in the sound recordings on the album.[6]

### A.   Big Cat's Release Of The New Album Violates La Flare's Rights Under The Copyright Act Because Big Cat Failed To Obtain Mechanical Licenses For The Musical Compositions Embodied On The Album

In order for Big Cat to demonstrate that it has the right to release the New Album (or any further Gucci Mane recordings), it not only has to show that it has a copyright interest in the sound recordings (and this is disputed)[7] but it also has to establish that it was granted mechanical licenses with respect to the underlying compositions from Gucci Mane. While Big Cat contends that it received such licenses because the grant of such licenses was allegedly fully executed under the amended Joint Venture Agreement, its position is contradicted by the unambiguous language of Paragraph 2 of the amendment and by clear and applicable Georgia law.

Specifically, Paragraph 2 of the amendment provides, in relevant part, as follows:

> Venture Partner **agrees to deliver** to Company all necessary assignments of copyrights, **mechanical licenses**, label copy, copyright information, "sample" clearances and other information required to manufacture, market, distribute and sell records. (Emphasis supplied).

As is clear from a plain and literal reading of the *in futuro* executory language employed (i.e. *"agrees to deliver"*) this provision established no more than an executory contractual obligation on the part of La Flare to deliver mechanical licenses, rather than, a self-executing

---

[6] It is undisputed that La Flare never approved the New Album as is its exclusive right under Paragraph 9 of the Joint Venture Agreement. Big Cat never sought or obtained such approval. But since this issue is not the focus of the briefing requested by this Court, La Flare will defer more detailed analysis of this issue. Suffice it to say, if the Joint Venture Agreement continues to apply to the assets of the joint venture (which it clearly does), Big Cat has plainly and purposefully breached its contractual and fiduciary obligations to La Flare.

[7] It is undisputed that La Flare assigned co-ownership of the copyrights in sound recordings recorded by Gucci Mane during the term of the Joint Venture Agreement. However, Big Cat has not provided any evidence of when or where the recordings on the New Album were recorded (and it has not identified any of the other recordings it claims to co-own). In fact, as noted in footnote 4 above, based on a preliminary review of the New Album, some of the recordings precede the term of the Joint Venture and some of the recordings actually belong to Atlantic Records, having been recorded after the termination of the term of the Joint Venture Agreement.

grant.

Virtually an identical argument to that made by Big Cat here (that the Joint Venture Agreement constituted an executed conveyance of mechanical licenses) was made by the defendant in Clarke v. Wolfe, 41 S.E. 581, 115 Ga. 320 (Ga. Sup Ct. 1902). Clarke had entered into a contract with one Clifton (who operated a sawmill and owned timber lands) in which Clifton "agrees to deliver" all of the timber and lumber he may cut from certain lands and Clarke agreed to pay a set price for such timber and lumber. After Clifton sold the mill and lands to Wolfe, Clarke seized lumber that Wolfe had milled, claiming that under the agreement with Clifton, it was the owner of the timber and lumber from the date of the contract. Wolfe claimed that the agreement did not pass title to the timber and lumber and that the "agrees to deliver" language provided only an executory contractual obligation. The Georgia Supreme Court fully agreed with Wolfe and concluded that while Clarke might have a beach of contract claim for damages against Clifton for his failure to honor the contract, the contract did not constitute a conveyance of title but was merely an executory contractual obligation. See also, Yates v. Jones, 73 S.E. 657, 137 Ga. 460 (Ga. Sup. Ct. 1912); Forsyth Mfg. Co. v. Castlen, 37 S.E. 485, 112 Ga. 199 (Ga. Sup. Ct. 1900).

While the foregoing Georgia authority is dispositive (it is undisputed that Georgia law is specifically applicable to the Joint Venture Agreement), there is nothing unusual about the decisions of the Georgia Supreme Court. Courts elsewhere confronted with similar language have reached the identical conclusions. See e.g. Commercial Structures and Interiors, Inc. v. Liberty Education Ministries Inc., 192 S.W. 3d 827, 833-834 (Ct. of App. Tx. 2006) (holding that phrase "agrees to assign" indicates a future or prospective intent to convey and assign rather than a present intention, and therefore use of such language in agreement purporting to give

11

rights in certain receivables to defendant did not effect a present transfer of such receivables but only evidenced an intent to assign such receivables in the future).

The conclusion dictated by the foregoing authorities is only reinforced by reference to the difference in the language used by Big Cat with respect to the manner in which it acquired co-ownership in the master recordings. It cannot be disputed that the Joint Venture Agreement and its amendment were drafted by Big Cat.[8] When Big Cat wanted to specifically create a self-executing conveyance of title to property, it knew how to do so. Thus in the preceding sentence of the very same Paragraph of the amendment, dealing with Big Cat's rights vis-à-vis the recordings, it states as follows:

> Venture Partner [La Flare] **hereby assigns, transfer, conveys and sells** to Company [Big Cat] an undivided fifty (50%) percent interest in all of Venture Partner's right, title and interest in all Master Recordings by Artist. (Emphasis supplied).

Even absent Georgia law, the distinction between the two provisions, based on a plain and literal reading of the language employed, makes clear that the obligation to issue (deliver) mechanical licenses was an executory obligation to be performed in the future and that existed only under the Joint Venture Agreement whereas the assignment of co-ownership of the master recordings was immediately effected. This executory obligation is thus enforceable only if the Joint Venture Agreement continues to exist and govern the relationship of the joint venturers with respect to the property of the joint venture.

Because it is Big Cat's position that the Joint Venture Agreement no longer exists then Gucci Mane and/or La Flare are not subject to any enforceable contractual obligation to issue mechanical licenses. Without mechanical licenses (which Big Cat lacks for its album), Big Cat cannot manufacture and distribute its album without infringing the copyrights in the underlying

---

[8] Indeed, La Flare will prove that Big Cat demanded and drafted the amendment as the price Gucci Mane had to pay for Big Cat's assistance with certain legal problems he had at the time.

12

compositions. As such, Big Cat is liable for copyright infringement and its request that this Court issue a declaratory judgment (on an expedited basis) that it is not an infringer should be rejected as a matter of law.

Of course, should Big Cat now decide to alter its position and acknowledge that the Joint Venture Agreement continues to exist (in order to profess an entitlement to the issuance of mechanical licenses), Big Cat would still be liable for copyright infringement as well as breach of contract and breach of fiduciary duty. As noted, under Paragraph 9 of the Joint Venture Agreement La Flare has exclusive "**creative control with respect to: A&R, artwork, video concept and storyboard and musical direction of Artist.**" (Emphasis supplied.). This vests in La Flare the right to decide when and if a recording has been satisfactorily completed and should be made available for public distribution. It vests in La Flare the exclusive right to determine what recordings should be combined together on an album. It gives La Flare the exclusive right to determine the artwork on any album. None of the recordings on Big Cat's new album have been authorized by La Flare pursuant to Paragraph 9. Hence, the release of such recordings is unauthorized, in breach of contract and breach of the fiduciary duty Big Cat owes La Flare as its joint venture partner. And because the distribution of the recordings is not authorized, La Flare and Gucci Mane have no obligation to issue mechanical licenses for such recordings, making the distribution of the album copyright infringement.[9]

Thus no matter what position Big Cat takes, it is clear, from a plain reading of the unambiguous language of the applicable agreements, that Big Cat has no right to release the new album and therefore, its request for Declaratory Relief must ultimately be denied. Indeed, La

---

[9] It would be absurd for Big Cat to contend that it is free to ignore La Flare's contractual rights by putting out an album that has not been authorized by La Flare and, at the same time, insist that La Flare is nonetheless obligated to then issue mechanical licenses for such an unauthorized album.

Flare will ultimately succeed on its contemplated counterclaims against Big Cat and its distributor, Tommy Boy Entertainment for breach of contract, breach of fiduciary duty and copyright infringement.

## CONCLUSION

For the foregoing reasons Defendant respectfully submits that Plaintiff's request for Declaratory Relief must ultimately be denied and that Defendant will be entitled to recover damages for breach of contract, breach of fiduciary duty and for willful copyright infringement.

Dated: New York, New York
      September 25, 2007

Respectfully submitted,

PRYOR CASHMAN LLP

By: _____
Donald S. Zakarin (DZ-6355)
Anika Lewis (AL-2005)
410 Park Avenue
New York, New York 10022
(212) 421-4100
Attorneys for Defendant